(702 P.2d 935)
No. 56,588

LORRAINE ALVARADO, *Appellant,* v. THE CITY OF DODGE CITY,
KANSAS, a municipal corporation; ALCO DISCOUNT STORES, a
corporation; and ROBERT FOX, *Appellees.*

Opinion filed May 2, 1985.

*Donald E. Shultz,* of Shultz & Associates, P.A., of Dodge City, for the appellant.

*Robert A. Anderson* and *Casey R. Law,* of Turner and Boisseau, Chartered, of Great Bend, for the appellee The City of Dodge City, Kansas.

*B. G. Larson,* of Williams, Larson, Strobel, Estes & Malone, of Dodge City, for the appellees Alco Discount Stores and Robert Fox.

Before MEYER, P.J., BRISCOE, J., and CORWIN C. SPENCER, J. Retired, Assigned.

BRISCOE, J.: Lorraine Alvarado, the plaintiff, appeals a judgment in favor of defendants Dodge City, Alco Discount Stores, and Robert Fox on her civil rights, false arrest, libel, and assault and battery claims. The claims arose out of the plaintiff's detention on January 16, 1982, as a suspected shoplifter by Robert Fox, an off-duty city policeman working as a security guard for Alco.

On that date, the plaintiff bought several items, including a pair of women's shoes, at the Alco store. Fox had observed her in the store, followed her outside, and asked her to return inside. The exact conversation is disputed but, essentially, Fox identified himself as a police officer, displayed his badge, and told the plaintiff he suspected her of shoplifting the shoes she was wearing. When the plaintiff refused to go voluntarily, Fox told her she was under arrest and took her to a storage area at the back of the store. He ordered the plaintiff to remove a shoe and asked a clerk to check whether the plaintiff's shoes came from the store. According to the plaintiff and the clerk, the shoes were obviously old and well worn. Fox testified they were "fairly new" with some scratches and worn spots. The clerk told Fox: "We don't carry these shoes," but he told her to check anyway.

While the clerk was checking the shoes, Fox searched the plaintiff's purse and shopping bag, but found nothing. After the clerk confirmed the shoes were not stolen, Fox released the plaintiff. He filled out a report for Alco and an arrest report, which he filed with the Dodge City Police Department.

The plaintiff raised four claims against the three defendants: false imprisonment, assault and battery, defamation, and denial of civil rights under 42 U.S.C. § 1983 (1982). The City moved for summary judgment on the civil rights claim. The trial court entered summary judgment on that claim in favor of all three defendants without making any findings of fact or conclusions of law. The trial court also dismissed all other claims against the City before trial. The false imprisonment, assault and battery, and defamation claims against Fox and Alco were tried before a

jury. The jury found for the defendants and the court entered judgment accordingly.

The plaintiff raises five issues on appeal: (1) whether the trial court erred in entering summary judgment in favor of the defendants on the civil rights claim; (2) whether the trial court erred in instructing the jury on the merchant's privilege to detain rather than a police officer's privilege to arrest; (3) whether the trial court erred in denying the plaintiff's requested instruction defining probable cause; (4) whether the trial court erred in excluding evidence of Alco's own standards for detaining suspected shoplifters; and (5) whether there was sufficient evidence to support the verdict.

## ■ THE CIVIL RIGHTS CLAIM.

The plaintiff argues the trial court erred in entering summary judgment in favor of the defendants on the civil rights claim.

Summary judgment is proper only when the pleadings, affidavits and discovery record show there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. *Lostutter v. Estate of Larkin*, 235 Kan. 154, 164, 679 P.2d 181 (1984). In reviewing a summary judgment, an appellate court must read the record in the light most favorable to the party who opposed the motion. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 4, 662 P.2d 1203 (1983). The court therefore must give the plaintiff the benefit of all reasonable inferences arising from the record available to the trial court when it ruled on the motion.

The trial transcript cannot be considered on this issue. The trial court had only the pleadings and discovery record when it granted summary judgment.

There are two essential elements to a civil rights claim under 42 U.S.C. § 1983: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution and laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 68 L.Ed.2d 420, 101 S.Ct. 1908 (1981). The state courts are a proper forum for federal civil rights actions under 42 U.S.C. § 1983. *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, 509, 646 P.2d 1078 (1982), *cert. denied* 459 U.S. 1103 (1983).

## A. The Claim Against Fox.

### (i) Color of Law.

The defendants argue that Fox could not act under color of law because he was working as a private security guard while off duty.

They argue there must be official police department sponsorship of off-duty activities for those activities to be under color of law. This argument is without merit. An off-duty police officer may act under color of law. " 'It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.' " *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir. 1975); *Johnson v. Hackett,* 284 F.Supp. 933, 937 (E.D. Pa. 1968).

Here, Fox identified himself as a police officer, displayed his badge, told the plaintiff she was under arrest, and filed an arrest report with the police department. According to Fox, it was the City's policy that an off-duty officer "was to be considered on duty, and if he saw illegal action going on, he was to take steps to prevent it." The record was sufficient to preserve the factual claim that Fox acted under color of state law. See *Layne v. Sampley,* 627 F.2d 12 (6th Cir. 1980); *Davis v. Murphy,* 559 F.2d 1098 (7th Cir. 1977); *Stengel v. Belcher,* 522 F.2d 438.

### (ii) Deprivation of Rights.

The plaintiff alleged that Fox arrested and searched her without probable cause. Arrest and search without probable cause are grounds for a civil rights claim under 42 U.S.C. § 1983. *Monroe v. Pape,* 365 U.S. 167, 5 L.Ed.2d 492, 81 S.Ct. 473 (1961), *overruled on other grounds, Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978); *B.C.R. Transport Co., Inc. v. Fontaine,* 727 F.2d 7 (1st Cir. 1984); *Smith v. City of Oklahoma City,* 696 F.2d 784 (10th Cir. 1983).

### a. Arrest.

The record was sufficient to preserve the factual claim that there was an arrest. K.S.A. 1984 Supp. 22-2202(4) defines arrest as "the taking of a person into custody in order that such person may be forthcoming to answer for the commission of a crime." According to Fox's deposition, he told the plaintiff she was under arrest and ordered her back into the store. He testified she was

not free to leave, and described the incident as an arrest in his police report. Fox detained the plaintiff to answer for a crime, for he acted on what he considered probable cause to believe she had committed misdemeanor theft.

### b. Probable Cause.

Whether Fox had probable cause to arrest the plaintiff was an unresolved question of fact.

"Probable cause for arrest exists if facts and circumstances within an arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed." *State v. Press*, 9 Kan. App. 2d 589, Syl. ¶ 2, 685 P.2d 887 (1984); *State v. Abu-Isba*, 235 Kan. 851, 854, 685 P.2d 856 (1984).

In his deposition, Fox explained why he believed the plaintiff had stolen a pair of shoes. He "felt" she had spent an unduly long time (five minutes) looking at a pair of shoes. A reasonable person could find Fox's belief that this was suspicious activity to be unreasonable. Fox thought he saw the plaintiff put the shoes on after she left the shoe department. The plaintiff testified in her deposition, however, that when she tried on the shoes she was next to the shoe rack. There is nothing suspicious about trying on shoes in a shoe department.

Fox thought he saw the plaintiff picking at the price tag on the shoes, and found a loose tag on the floor when the plaintiff moved on. The code number on the tag showed it was not from the shoe department, and the $2.00 price on the tag Fox found on the floor would be extremely low for a pair of shoes, even shoes on sale at a discount store. Fox could have checked the code number on the price tag he found on the floor against a tag from the shoe department, but did not. Instead, he asked a clerk, who may have been busy with a customer, if the tag was like the ones on the store's shoes.

Fox observed the plaintiff go through the check-out line, but failed to notice that she bought a pair of shoes. A reasonable person could conclude that Fox did not have sufficient reason to make the initial arrest.

Even if there was probable cause for the initial arrest, a reasonable person could conclude there was no reason to search plaintiff's bag and purse.

Fox had a specific suspicion—that the plaintiff stole the shoes

*she was wearing.* In their depositions, the plaintiff and a shoe department clerk described the shoes as old and well worn. Even Fox conceded they had scratches and worn spots. After inspecting the shoes, Fox asked the clerk if they were from Alco. She told him positively that they were not, but he had her check in the shoe department and went on to search the plaintiff's purse and shopping bag. According to the plaintiff's deposition, the clerk returned and reconfirmed that the shoes were not stolen before Fox searched the bag and purse.

The bag and purse would have been within the scope of a search incident to a lawful arrest (*New York v. Belton,* 453 U.S. 454, 69 L.Ed.2d 768, 101 S.Ct. 2860 [1981]; *State v. Sabater,* 3 Kan. App. 2d 692, 601 P.2d 11, *rev. denied* 227 Kan. 928 (1979), *cert. denied* 446 U.S. 918 (1980), but if in fact Fox should have known his initial suspicion was groundless, probable cause for the arrest would have dissipated, making any further detention and search unlawful. *United States v. Coughlin,* 338 F. Supp. 1328 (E.D. Mich. 1972); *People v. Quarles,* 88 Ill. App. 3d 340, 43 Ill. Dec. 497, 410 N.E.2d 497 (1980); *McNeely v. State,* 277 So. 2d 435 (Miss. 1973); *Castellano v. State,* 585 P.2d 361, 366 (Okla. Crim. 1978).

Whether Fox should have known his initial suspicion was groundless is a question of fact left unresolved by the record on summary judgment. The trial court erred in entering summary judgment in favor of Fox.

c. Immunity.

In their answers, the defendants raised good faith immunity as a defense. Although the parties have not addressed the issue, the court must because a judgment should be affirmed if it is correct for any reason.

In *Pierson v. Ray,* 386 U.S. 547, 557, 18 L.Ed.2d 288, 87 S.Ct. 1213 (1967), the court held that a defense of "good faith and probable cause" is available to defendant police officers in actions under 42 U.S.C. § 1983. Good faith or qualified immunity is an affirmative defense, to be pleaded and proved by the defendant. *Gomez v. Toledo,* 446 U.S. 635, 640-41, 64 L.Ed.2d 572, 100 S.Ct. 1920 (1980). See *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982).

In *Harlow,* the court limited the subjective element of good faith or qualified immunity, holding:

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. . . . [Citations omitted.]

". . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors." 457 U.S. at 818-19.

See *McElveen v. County of Prince William,* 725 F.2d 954, 957-58 (4th Cir.), *cert. denied* _____ U.S. _____, 105 S.Ct. 88 (1984).

In *Deary v. Three Un-named Police Officers,* 746 F.2d 185 (3d Cir. 1984), the court considered the effect of *Harlow* on the immunity defense in a civil rights claim based on a warrantless arrest. The court noted that the requirement of probable cause for an arrest is clearly established law. Because all police officers should know the requirement, the only real issue was whether the arresting officers had probable cause. The court explained:

"[O]n the facts and circumstances of this case, a finding of probable cause—which would preclude the finding of a constitutional violation for section 1983 purposes—and a finding of entitlement to qualified immunity—which would preclude liability even if the defendants had violated Deary's constitutional rights—both turn on the reasonableness of the defendant police officers' actions in arresting and detaining Deary—a determination which we have held presents a question of fact for the jury.

"Inasmuch as the reasonableness of the actions taken by the defendant police officers will determine the question of probable cause, it appears to us that although the doctrines which we have been discussing may be analytically different [citations omitted], both depend upon the jury's answer to the question: was probable cause present?" 746 F.2d at 192.

See *Losch v. Borough of Parkesburg, Pa.,* 736 F.2d 903, 910 (3d Cir. 1984); *Trejo v. Perez,* 693 F.2d 482, 487-88 (5th Cir. 1984).

Here, as in *Deary,* the civil rights claim is based on a warrantless arrest. Because Officer Fox must be charged with knowledge of the probable cause requirement, subjective good faith cannot establish immunity. His liability depends on the objective test for probable cause.

## B. The Claim Against the City.

Under 42 U.S.C. § 1983, a local government cannot be held liable for acts of its agents merely under a respondeat superior theory. Local governments are liable only when execution of a

government policy or custom inflicts the injury. *Monell v. New York City Dept. of Social Services,* 436 U.S. at 690-94.

Cities are liable for unconstitutional policies officially adopted through formal channels. Tacit authorization or deliberate indifference to unconstitutional actions of employees is also sufficient to establish a government policy or custom. Tacit authorization or deliberate indifference may be inferred when there is a persistent pattern of misconduct. A single incident is not sufficient unless it is so outrageous that it warrants an inference that the city was at fault. *Wellington v. Daniels,* 717 F.2d 932 (4th Cir. 1983); *Languirand v. Hayden,* 717 F.2d 220 (5th Cir. 1983), *cert. denied* 467 U.S. 1215 (1984); *Vela v. White,* 703 F.2d 147 (5th Cir. 1983); *Hays v. Jefferson County, Ky.,* 668 F.2d 869 (6th Cir.), *cert. denied* 459 U.S. 833 (1982); *Turpin v. Mailet,* 619 F.2d 196 (2d Cir.), *cert. denied* 449 U.S. 1016 (1980); *Owens v. Haas,* 601 F.2d 1242 (2d Cir.), *cert. denied* 444 U.S. 980 (1979). See *Rizzo v. Goode,* 423 U.S. 362, 46 L. Ed.2d 561, 96 S.Ct. 598 (1976).

Here, the plaintiff alleged only that Fox was a policeman employed by the city. She did not allege that Fox was following a city custom or policy of making arrests without probable cause, or of harassing minorities. The summary judgment record contains nothing to support the existence of a city custom or policy. In her deposition, Tana Freel testified that Fox had used force in a prior arrest at Alco, but did not state or imply that the prior arrest was unlawful. There was no evidence of a pervasive pattern of conduct by Fox or other officers. Nor was there evidence of any outrageous single incident. There was no evidence of tacit authorization or unlawful conduct that could establish the existence of a city custom or policy.

Plaintiff's counsel made an oral proffer of evidence to support the existence of a city custom or policy at a hearing on November 29. He stated that witnesses would testify that the police discriminated against minorities and that city officials knew it. He also stated that witnesses would testify that Fox had been over-zealous in two prior incidents.

Under K.S.A. 60-256(c), the record on a motion for summary judgment consists of the pleadings, discovery record, and affidavits. Oral proffers of proof should not be considered in deciding a motion for summary judgment. *Timmermeyer v. Brack,* 196 Kan.

481, Syl. ¶ 2, 412 P.2d 984 (1966). See *Green v. Kaesler-Allen Lumber Co.,* 197 Kan. 788, 792, 420 P.2d 1019 (1966).

The trial court did not err in entering summary judgment in favor of the city.

### C. The Claim Against Alco.

Private parties may be liable under 42 U.S.C. § 1983 if they act jointly with state officials. *Dennis v. Sparks,* 449 U.S. 24, 66 L.Ed.2d 185, 101 S.Ct. 183 (1980). See *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941, 73 L.Ed.2d 482, 102 S.Ct. 2744 (1982); *Duriso v. K-Mart No. 4195, Div. of S.S. Kresge Co.,* 559 F.2d 1274 (5th Cir. 1977).

Here, the record on summary judgment establishes only that Alco had employed Fox as a security guard for several Christmas seasons. Just as a respondeat superior theory cannot support the liability of a local government, it should not support the liability of a private party. A person must cause a deprivation of rights to be liable under 42 U.S.C. § 1983. *Monell v. New York City Dept. of Social Services,* 436 U.S. at 691-92; *Rizzo v. Goode,* 423 U.S. at 371, 375; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983).

The record does not show that Alco did any more than hire Fox. There is nothing indicating that it authorized, encouraged or approved illegal actions. The trial court did not err in entering summary judgment in favor of Alco.

### ■ JURY INSTRUCTION ON MERCHANT'S PRIVILEGE TO DETAIN.

Over the plaintiff's objection, the trial court instructed the jury on the merchant's privilege to detain suspected shoplifters (PIK Civ. 2d 14.09 and 14.21A [1981 Supp.]). K.S.A. 21-3424(3) is the source of the merchant's privilege. See *Codner v. Skaggs Drug Centers, Inc.,* 224 Kan. 531, 533, 581 P.2d 387 (1978). Subsection (2) of the statute provides: "This section shall not apply to acts done in the performance of duty by any law enforcement officer of the state of Kansas or any political subdivision thereof."

Fox's own testimony established that he was acting in a dual capacity when he arrested the plaintiff. He was performing his duties as an Alco security guard and his duties as a police officer. Admissions of a party are binding and conclusive upon that party. *Simpson v. Davis,* 219 Kan. 584, Syl. ¶ 4, 549 P.2d 950 (1976); *Carnegie v. Gage Furniture, Inc.,* 217 Kan. 564, Syl. ¶ 2, 538 P.2d 659 (1975).

Fox's employment by Alco did not affect his duties and responsibilities as a police officer. He should be held to the standards required of a police officer. Alco should be held to the same standards. Under the doctrine of respondeat superior, as Fox's employer, Alco is liable for his tortious acts committed within the scope of his employment. *McGuire v. Sifers*, 235 Kan. 368, 378, 681 P.2d 1025 (1984).

The store manager testified that he had a policy of hiring off-duty police officers as security guards. The practice has obvious advantages for Alco. The store receives the benefit of the officer's training, experience and legal authority. Because the store benefits from the practice, it should bear any corresponding burdens. A store that hires off-duty police officers as security guards should be held to the standards required of police officers when an officer-employee arrests a suspected shoplifter.

The merchant's privilege to detain differs from a police officer's privilege to arrest. A merchant may detain a person upon probable cause to believe that he or she has committed, is committing, or is about to commit a theft. K.S.A. 21-3424(3). The statute does not distinguish between felony and misdemeanor theft.

A police officer cannot make a preventive *arrest* upon probable cause to believe a suspect is *about* to commit a crime. Authority under those circumstances is limited to an investigative detention under *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968), and K.S.A. 22-2402.

Nor may an officer arrest merely upon probable cause to believe the suspect has committed or is committing a misdemeanor. K.S.A. 1984 Supp. 22-2401 sets out the standards for arrest by a police officer. Under subsections (c)(2) and (d), a warrantless misdemeanor arrest requires either exigent circumstances or a misdemeanor committed in the officer's presence.

The arrest by Fox would be lawful only if the requirements of K.S.A. 1984 Supp. 22-2401 were satisfied. On retrial the court should give an instruction based on the statute.

PIK Civ.2d 14.21 is outdated and should not be used. It is based on case law decided before the Code of Criminal Procedure went into effect in 1970. See *State v. Hart*, 200 Kan. 153, 160, 434 P.2d 999 (1967). K.S.A. 1984 Supp. 22-2401(c)(2)

changed the law on warrantless misdemeanor arrests. *State v. Flummerfelt,* 235 Kan. 609, 612-13, 684 P.2d 363 (1984).

■ JURY INSTRUCTION DEFINING PROBABLE CAUSE.

The trial court erred in denying the plaintiff's request for an instruction defining probable cause. The term has a legal definition likely to aid jurors in assessing whether Fox's actions were reasonable.

On retrial the court should give an instruction based on *State v. Abu-Isba,* 235 Kan. at 854, and *State v. Press,* 9 Kan. App. 2d 589, Syl. ¶ 2, but should follow the practice of PIK Civ. 2d by substituting the term "reasonable belief" for "probable cause." The avoidance of the word "probable" will prevent confusion because "evidence sufficient for probable cause need not show that guilt is probable; it need only convince a 'reasonable officer that guilt is more than a possibility.' " *State v. Walters,* 8 Kan. App. 2d 237, 655 P.2d 947 (1982), *rev. denied* 232 Kan. 876 (1983).

■ EXCLUSION OF ALCO'S OWN STANDARDS FOR
DETAINING SHOPLIFTERS.

The plaintiff argues that the trial court erred in excluding evidence of Alco's own standards for detaining suspected shoplifters. The plaintiff offered a poster and shoplifting control manual setting out the company policy in some detail.

Alco's own shoplifting detention standards are stricter than the probable cause required by K.S.A. 1984 Supp. 22-2401. A merchant's liability should depend on the minimum legal standards established by statute rather than the merchant's own standards. See *Jones v. Montgomery Ward,* 49 Or. App. 231, 236-37, 619 P. 2d 907 (1980). The trial court did not err in excluding the evidence.

■ SUFFICIENCY OF THE EVIDENCE.

Because the errors in the instructions require reversal, we need not address the sufficiency of the evidence.

The summary judgment in favor of Alco and the City on the civil rights claim is affirmed; dismissal of all state law tort claims against the City is also affirmed. The summary judgment in favor of Fox on the civil rights claim is reversed, as well as the judgment on the state law tort claims against Alco and Fox. This case is remanded for trial of the civil rights claim against Fox, and retrial of the state law tort claims against Fox and Alco.