NOT DESIGNATED FOR PUBLICATION

No. 119,375

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DON and REBA COX, and
ROBERT E. COX,
*Appellants,*

v.

COMMUNITY STATE BANK,
*Appellee.*

MEMORANDUM OPINION

Appeal from Montgomery District Court; JEFFREY D. GOSSARD, judge. Opinion filed July 12, 2019. Affirmed.

*Stephen P. Weir*, of Stephen P. Weir, P.A., of Topeka, for appellants.

*M. Doug Bell,* of Hall, Levy, DeVore, Bell, Ott & Kritz, of Coffeyville, for appellee.

Before MALONE, P.J., SCHROEDER, J., and MCANANY, S.J.

PER CURIAM: Banks expect to be repaid on their loans. Robert Cox, Don Cox, and Reba Cox each obtained multiple commercial loans from the Community State Bank (formerly Condon Bank) (Bank). Don and Reba are Robert's parents. Robert, Don, and Reba initiated this litigation claiming, among other things, Bank acted negligently because it misapplied payments to their various commercial loan accounts. Bank filed a counterclaim against Robert, Don, and Reba claiming each failed to timely pay or otherwise comply with the terms of their notes, mortgages, and security agreements with Bank. Bank moved for summary judgment on its counterclaims, but Robert, Don, and

1

Reba failed to respond. The district court granted Bank's summary judgment motion on its counterclaims for judgment on the various commercial notes and for foreclosure of the mortgages and security agreements. Robert, Don, and Reba moved to alter or amend the summary judgment order, alleging excusable neglect in their failure to timely respond. The district court denied their request, finding no excusable neglect. Bank then moved for summary judgment on the claims Robert, Don, and Reba raised against Bank. Although Robert, Don, and Reba timely opposed the motions, the district court granted summary judgment in favor of Bank, finding no genuine issues remained. Robert, Don, and Reba now argue the district court erred in granting the first summary judgment, denying their request to amend that judgment, and granting the second summary judgment. Robert, Don, and Reba's cases have been consolidated on appeal.

FACTS

*Robert's loans*

Robert's relationship with Bank was extensive, and he entered into the following commercial notes, mortgages, and security agreements:

- A 2008 commercial note and mortgage for $21,920 on Robert's property in Coffeyville, Kansas. The mortgage contained a cross-collateralization clause securing any previous and future obligations.
- A 2010 security agreement granting Bank a security interest in all of Robert's inventory, equipment, and accounts, including any property he acquired after the agreement.
- A 2010 commercial note to buy a 2010 Dodge pickup listing the pickup as collateral.
- A 2011 commercial note for $12,987.18, with Robert's pickup, 2010 security agreement, and mortgage as collateral.

2

- Another 2011 commercial note for $8,117.75, with Robert's 2011 PJ 40-foot flat deck trailer as collateral.
- A 2011 security agreement granting Bank a security interest in the trailer and a cross-collateralization clause securing all previous and future obligations.

All of Robert's agreements contain similar language. Under the four promissory notes and cross-collateralization agreements, default by Robert on one loan allowed Bank to call all the notes due and payable. In the event of Robert's default, the notes, mortgage, and security agreements provided Bank with several remedies. First, Bank could declare the entire unpaid balance immediately due. Next, Bank could request judicial foreclosure of the mortgaged property and sell it. Third, Bank could repossess the collateral listed in the security agreements and sell it. Finally, Bank could set-off any of Robert's loans or his security agreements with other payments Bank received from him.

In 2011, Robert fell behind on paying Bank, missing multiple payments. In 2013, Bank repossessed the pickup and trailer. Bank eventually sold the pickup to pay off the first 2010 commercial note.

*Don and Reba's loans*

Don and Reba agreed to at least seven commercial loans with Bank, but the parties did not include all of those agreements in the record on appeal. The appellate record includes the following notes and security interests Don and Reba made with Bank:

- A 2009 commercial loan to Don for livestock and a signed security agreement providing Bank with a security interest in Don's inventory, equipment, and livestock.
- An April 2010 loan to Don for $55,029.63 with Don's 2009 security agreement as collateral.

3

- An April 2010 loan to Don for $13,610.43 to purchase a car listing the car as collateral.

- An August 2010 loan to Don and Reba for $115,946.68. Don and Reba gave Bank a mortgage on their property and a security agreement granting Bank a security interest in a 2010 Dodge 3500 diesel pickup, farm products, livestock, farm equipment, and all after-acquired property. The loan was also secured by Don's 2009 security agreement.

- A 2014 workout agreement between Don and Bank to resolve several outstanding loan-related issues. The specifics of the agreement are not necessary for us to resolve the issues of this appeal. However, the parties specifically agreed their other notes and security agreements would take precedence if they conflicted with their new agreement.

The security agreements, commercial loans, and mortgage all contained similar language. Under those agreements, default by Don and Reba on one loan allowed Bank to call all the notes due and payable. The mortgage required Don and Reba to maintain insurance and pay their property taxes when due. The agreements also gave Bank the same default remedies against Don and Reba that Bank had against Robert. All of Don and Reba's security agreements and the mortgage contained cross-collateralization clauses securing any after-acquired property and all other amounts now or in the future owed by Don and Reba to Bank.

Bank repossessed the 2011 PJ trailer and in the process damaged Don and Reba's gate, so they sued Bank.

*Robert's suit*

Robert filed a pro se lawsuit against Bank, but the district court ordered Robert to make a more definite statement. Robert hired counsel, who filed an amended petition. Robert alleged he made multiple payments and Bank misapplied those payments to real estate taxes, his "operating loan," or even the wrong note. According to Robert, Bank's actions resulted in Robert's default and Bank repossessed his pickup without proper notice. Robert claimed Bank was liable for negligence and for failing to provide a notice of consumer right to cure under K.S.A. 16a-5-110.

Bank filed an answer denying Robert's claims and alleging counterclaims against him. According to Bank, Robert defaulted on his 2011 loans listing his pickup and trailer as collateral because he did not timely pay. His default on his 2011 loans caused Robert to default on the 2008 mortgage loan. Based on Robert's alleged defaults, Bank claimed it was entitled to collect all balances owed, foreclose on the 2008 mortgage, and seize the collateral in the security agreements. Bank also argued it was entitled to costs and attorney fees as described in the agreements.

Robert's counsel withdrew, so Don filed an answer to Bank's counterclaims on Robert's behalf, but Robert did not sign it. Robert's answer denied he made late payments on the 2011 loan secured by his pickup and again claimed Bank misapplied his payments to the wrong note. Robert also alleged he was current on the 2008 mortgage and promissory note, but those agreements were not connected to any other obligation with Bank. Robert claimed he paid his 2010 pickup loan in full. He failed to mention the 2011 security agreement listing the trailer as collateral.

*Don and Reba's suit*

Don and Reba first filed a pro se petition for conversion against Bank, but the district court ordered Don and Reba to provide a more definite statement. They hired an attorney who prepared their first amended petition.

According to their petition, Don and Reba had a right to recover against Bank for negligence, breach of contract, two violations of Kansas consumer notice requirements under K.S.A. 16a-5-110, and trespass to chattel.

They alleged Bank committed negligence in two respects. First, Don and Reba alleged in 2012 Don delivered a check for $38,010.29 from the proceeds of the sale of the livestock secured in their 2010 security agreement. Don also delivered $10,000 in cash for Bank to apply to other loans. They claimed they owed $27,000 for their livestock loan, but Bank failed to apply the check to the proper loan. Next, Don and Reba alleged Bank took several of their payments and applied those to Robert's loans. Based on Bank's misapplication of these payments, Don and Reba claimed they became delinquent in their own loans.

For their breach of contract claim, Don and Reba alleged Bank forced them to purchase insurance on their mortgaged property. They claimed the mortgage and promissory note did not require they purchase insurance to cover the house.

Don and Reba also claimed in June 2013 bank employees repossessed a 2011 PJ trailer and a Lincoln car without providing a consumer notice under K.S.A. 16a-5-110. During the repossession, Don and Reba alleged bank employees entered their land, broke the gate, and had no security interest in the 2011 PJ trailer. Accordingly, they raised a claim against Bank for trespass to chattel.

As a result of repossessing the trailer, Don and Reba alleged Reba was unable to operate her business. Don and Reba also claimed they paid all of their loans in full, but Bank refused to release its lien on their Kenworth truck and trailer.

It would appear Bank filed an answer and counterclaims, but the parties did not include those documents in the appellate record. However, the record reflects Don filed a pro se answer to Bank's counterclaims. Don's answer alleged Bank never applied the $38,010.29 from the proceeds of the sale of the livestock or the $10,000 in cash to his mortgage or to the payment "that was due on the day [he] presented the check to the bank." He admitted he signed an agreement with Bank in September 2014 but claimed he signed it under "extreme duress." He also claimed he did not represent Reba or her company, C&C Transports, when he signed the 2014 agreement. He claimed Bank had no claim to the 2011 PJ trailer. He claimed his 2011 loan was to purchase a 2005 Kenworth truck and a 2006 Fontaine trailer. Don believed he paid off the vehicle loans and claimed Bank would not release the lien or sign an insurance check after the Kenworth truck was involved in a wreck. Accordingly, Don argued Bank shut down his business. Don argued his mortgage was current and Bank had misapplied over $11,000 in principal payments.

*Motions for summary judgment*

*First summary judgment against Robert, Don, and Reba*

In April 2016, Bank moved for summary judgment on its counterclaims against Robert. Bank included a supporting affidavit and other documents. Bank argued Robert's answer was procedurally defective because neither Robert nor an attorney of record had signed it. Next, Bank argued it was entitled to summary judgment because Robert failed to controvert Bank's claims in his answer.

7

Bank also moved for summary judgment on its counterclaims against Don and Reba. Bank explained it applied Don's check for the sale of livestock to seven of his past due accounts. Bank argued it had a right to do so because the security interest securing the livestock also secured Bank's future advances to Don. Bank alleged Don and Reba defaulted on their mortgage because they failed to insure the property and pay real estate taxes. Bank also claimed Don and Reba defaulted on their August 2010 loan because they still owed for that loan and a default on the mortgage was a default on all agreements.

Bank timely served Robert, Don, and Reba, but they failed to respond to Bank's motions for summary judgment. Thirty days after Bank moved for summary judgment, the district court granted it. The district court adopted all the uncontroverted facts set out by Bank and allowed foreclosure of the mortgages, trailer, and all inventory, equipment, and accounts under the mortgages and security agreements.

Nearly two weeks later, Don filed motions in each case for an extension of time in both cases "while we acquire an attorney for the purpose of agreeing on a case management order with the [defendants'] attorney."

After hiring counsel, Robert, Don, and Reba moved to alter or amend the summary judgments. Robert claims he had been out of town working and never received a copy of the motion. Don and Reba also explained they were out of state working when Bank moved for summary judgment and the court granted the motion. They each argued they were entitled to an extension for time to respond under K.S.A. 2018 Supp. 60-256(f) and K.S.A. 2018 Supp. 60-260(b) for excusable neglect. They also claimed the court's order was defective for failing to state findings of facts and conclusions of law.

The district court denied Robert, Don, and Reba's request, finding they were pro se litigants when each was properly served with Bank's motions for summary judgment. The district court also found Robert, Don, and Reba failed to respond because they were

8

traveling for work and failed to monitor their mail. The district court noted it was foreseeable they would receive correspondence about the case while traveling. The court found it had incorporated all the uncontroverted facts in Bank's summary judgment motions and its conclusions of law were adequate.

*Second summary judgment against Robert*

Bank moved for summary judgment against Robert's claims, alleging there were no genuine issue of material facts. Bank attached copies of Robert's financial agreements. Bank argued Robert could not recover on his negligence claim because the court had found Robert in default in its previous summary judgment order. Bank restated the following uncontroverted facts from that order:

- Robert defaulted on the 2011 loans for the pickup and trailer because he did not timely pay them;
- Robert defaulted on the 2008 loan for failing to timely pay his 2011 loans; and
- Robert gave Bank a mortgage and security interest in his business inventory, equipment, accounts, and trailer.

Bank argued it could apply the proceeds from the sale of the pickup to any loan it chose based on Robert's signed agreements and *Ram Co. v. Estate of Kobbeman*, 236 Kan. 751, 756, 696 P.2d 936 (1985).

Bank also argued Robert could not recover for his claim of a consumer notice violation under K.S.A. 16a-5-110 since the pickup loan was for Robert's business, not his personal use. Bank attached a copy of the disbursement request Robert signed which acknowledged Robert's 2010 promissory note was for a business purchase.

Robert filed a pro se "motion to deny summary judgment." In it, Robert argued he had no previous opportunity to present his claims to the court. He claimed the court could resolve his claims with witnesses and documents he would provide later, and there were "many reasons" Bank's motion for summary judgment should be denied.

Robert then tried to challenge the uncontroverted facts the district court adopted in its previous summary judgment order. He admitted the copies of the agreements Bank submitted to the court were correct, but Robert denied the underlying circumstances about the alleged defaults.

To support his facts, Robert attached Bank transactions for the 2008 loan, the 2010 pickup loan, and the 2011 loans secured by the pickup and trailer loan. These documents showed Robert made late payments for nearly two years on his 2010 and 2011 loans. By the end of June 2013, Robert owed two payments on the 2010 pickup loan, over three payments on one of his 2011 loans, and one payment on his other 2011 loan.

The district court granted Bank summary judgment against Robert's negligence and consumer notice claims. The district court found Robert was not entitled to recover for his negligence claim against Bank. The district court noted proceeds from the sale of the pickup were applied to more than one loan. Upon sale of collateral, the district court determined Bank had authority to apply those payments to any of the loans. Additionally, the district court noted the previous uncontroverted facts established Robert's loans were in default and default on one note established default on all of Robert's loans.

The district court also found Robert could not recover under K.S.A. 16a-5-110 because the statute controls consumer loans and Robert's loans were for his business. Given these facts, the court found there was no genuine issue remaining and summary judgment against Robert was appropriate.

10

*Second summary judgment against Don and Reba*

Bank moved for summary judgment against Don and Reba. However, the parties failed to submit a full copy of Bank's motion, memorandum, and exhibits in the appellate record. Instead, the parties included only some of Don and Reba's loan agreements in the record.

Don and Reba responded to Bank's motion, raising the same arguments lodged in their petition and answer to Bank's counterclaims. They also claimed the 2011 PJ trailer belonged to Reba and was not secured by any agreement signed by her. They agreed Bank provided a replacement gate for the gate damaged at the time of repossession, but Don and Reba claimed the gate was "cheap" and never installed it. Don and Reba claimed Bank recently generated a consumer right to cure letter under K.S.A. 16a-5-110, but the letter was not timely and did not comply with the statutory requirements.

The district court granted Bank summary judgment against Don and Reba's claims. The district court applied the uncontroverted facts from the first summary judgment order to support this summary judgment order.

The district court also found there were no facts to support Don and Reba's claims of negligence because it had ruled Bank properly applied Don and Reba's payments to their loans. The district court did not address whether Bank misapplied some of Don and Reba's payments to Robert's accounts. The district court found no breach of contract because Bank did not improperly force Don and Reba to purchase insurance on real estate or misapply mortgage payments. The district court noted they agreed in the 2010 mortgage to provide insurance for the real estate, but Don and Reba failed to keep the property insured and timely pay their real estate taxes. Based on their agreement, the district court found either event resulted in default. Accepting the affidavit from Bank's

vice president, the district court found Bank had already resolved Don and Reba's trespass to chattels claim by paying to replace Don and Reba's gate.

The district court also ruled Don and Reba were not entitled to recover under K.S.A. 16a-5-110 because they purchased their 2011 trailer with a business loan, not a consumer loan. The district court also found Bank sent a consumer right to cure notice to Don and Reba for the 2006 Lincoln Towncar. Finally, the district court found Bank had the right to repossess the 2011 PJ trailer because Don and Reba agreed to provide it as collateral in the August 2010 security agreement. The agreement provided all future acquired property became secured collateral for their loans.

ANALYSIS

Bank claims Don, Reba, and Robert are barred from appealing the district court's first summary judgment order because their notice of appeal includes no reference for that order.

The right to appeal is entirely statutory and is not a right contained in the United States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken within the time limitations and in the manner prescribed by the applicable statutes. *Wiechman v. Huddleston*, 304 Kan. 80, Syl. ¶ 1, 370 P.3d 1194 (2016).

The notice of appeal must specify the parties taking the appeal, designate the judgment or part thereof appealed from, and name of the appellate court to which the appeal is taken. K.S.A. 2018 Supp. 60-2103(b). See *Walker v. Regehr*, 41 Kan. App. 2d 352, 354, 202 P.3d 712 (2009). The appellate courts should liberally construe K.S.A. 2018 Supp. 60-2103(b) to assure justice in every proceeding. 41 Kan. App. 2d at 355-56.

12

Here, the notices of appeal were filed pro se by Robert, Don, and Reba. Their notices explain they are appealing the judgment entered on April 2, 2018, when the district court granted the second summary judgment for Bank. When the district court issued this summary judgment, it primarily relied on the first summary judgment. Liberally construing K.S.A. 2018 Supp. 60-2103(b) to assure justice in this proceeding, we find the notice of appeal is sufficient. See *Fuller v. State,* 303 Kan. 478, 492, 363 P.3d 373 (2015).

*The district court did not err in granting Bank summary judgment on its counterclaims against Robert, Don, and Reba.*

Robert alleges the district court erred in granting the first summary judgment against him. Robert claims Bank's uncontroverted facts could not support its counterclaims against him and his answer controverted Bank's facts. His arguments lack merit.

Don and Reba also argue the district court erred in granting Bank summary judgment on its counterclaims. Much like Robert, Don and Reba argue Bank's uncontroverted facts could not support its counterclaims. They also argue Don's answer controverted Bank's facts. These arguments also lack merit.

> ""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment

13

must be denied.'" [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

"'[T]he only effect of a non-movant's failure to respond to a motion for summary judgment is that it constitutes an admission . . . that there are no disputed issues of genuine fact warranting a trial; it does not constitute a waiver by the non-moving party of all legal arguments based upon those undisputed facts.' [Citations omitted.]" *Lumry v. State*, 305 Kan. 545, 566, 385 P.3d 479 (2016).

When Bank moved for summary judgment on its counterclaims, it relied on two forms of evidence—the affidavit from its vice president and copies of Robert, Don, and Reba's agreements with Bank. Bank's vice president confirmed Robert, Don, and Reba still owed a balance on their various loans. The vice president explained Bank disposed of some of Robert's collateral and after Bank applied the proceeds, Robert still owed on his remaining loans. Bank could demand full payment of Robert's loans at any time under the terms of the commercial loans and security agreements because Robert defaulted on his loans. As to Don and Reba's loans, the affidavit from the vice president and loan documents showed Don and Reba were in default on some, if not all, of their notes for missed payments.

The commercial loan documents, including the security agreements, provided a default on one loan could be considered a default on all loans allowing Bank to foreclose all notes, security agreements, and mortgages, seize the collateral, and sell it.

There was no genuine issue of material facts, and the district court did not err in granting Bank summary judgment on its counterclaims against Robert, Don, and Reba. Robert, Don, and Reba had the burden to present evidence to the district court to dispute Bank's facts. See *Patterson*, 307 Kan. at 621. Robert, Don, and Reba provided no evidence to dispute Bank's material facts. They did not respond to Bank's summary judgment motion, and their initial answers to the counterclaims failed to controvert the

14

motion for summary judgment. Additionally, Robert did not sign his answer. By failing to respond to Bank's material facts, Robert, Don, and Reba admitted to them. There was no genuine issue to preclude summary judgment. See *Lumry*, 305 Kan. at 566.

*The district court did not err in denying Robert, Don, and Reba's motion to alter or amend the first summary judgment.*

Robert, Don, and Reba contend the district court erred in denying their motion to alter or amend the first summary judgment against them. They argue they were entitled to relief either under K.S.A. 2018 Supp. 60-256(f), K.S.A. 2018 Supp. 60-260(b), or because the district court's summary judgment order was allegedly insufficient. Although it is less than clear from their appellate brief, it appears Robert, Don, and Reba intend to argue the district court erred as an abuse of discretion. See *First Nat'l Bank in Belleville v. Sankey Motors, Inc.*, 41 Kan. App. 2d 629, 634, 204 P.3d 1167 (2009) (the district court's decision whether to set aside a default judgment will be disturbed only on appeal upon a showing of abuse of discretion); see also *Morton County Hospital v. Howell*, 51 Kan. App. 2d 1103, 1112, 361 P.3d 515 (2015) (a district court's denial of a K.S.A. 2014 Supp. 60-260(b) motion is reviewed for abuse of discretion). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

*No relief under K.S.A. 2018 Supp. 60-256(f)*

Robert, Don, and Reba appear to argue the district court erred as a matter of law when it denied their request to alter or amend the first summary judgment under K.S.A. 2018 Supp. 60-256(f). Their argument raises a question of statutory interpretation, a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be

ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

K.S.A. 2018 Supp. 60-256(a) allows a party claiming relief to move for summary judgment. To oppose this motion, the nonmovant must respond within 21 days after the motion is served. K.S.A. 2018 Supp. 60-256(c)(1)(B). If a party opposing a motion shows by affidavit that it cannot present facts essential to justify the motion's opposition, the district court may deny the motion for summary judgment; order a continuance to enable affidavits or declarations to be obtained, depositions to be taken or other discovery to be undertaken; or issue any other just order. K.S.A. 2018 Supp. 60-256(f)(1)-(3).

Applying the record to the plain language of K.S.A. 2018 Supp. 60-256(f) shows Robert, Don, and Reba are not entitled to relief because they never opposed Bank's motions for summary judgment before the district court granted them. Under K.S.A. 2018 Supp. 60-256(c)(1)(B), Robert, Don, and Reba had 21 days to respond to Bank's motions. If they were unable to present facts essential to justify opposing Bank's motions, they should have requested relief under K.S.A. 2018 Supp. 60-256(f) before their 21 days expired. They failed to do so because they were representing themselves, out of town, and not checking their mail. Bank's uncontroverted facts in its summary judgment motions became admitted facts because Robert, Don, and Reba failed to timely controvert the facts within 21 days after the summary judgment motions were filed. See *Lumry*, 305 Kan. at 566. To allow Robert, Don, and Reba to obtain relief after the district court granted summary judgment goes against the plain language of K.S.A. 2018 Supp. 60-256

16

and reads words not readily found within the statute—something this court cannot do. *Ullery*, 304 Kan. at 409.

*No relief for excusable neglect under K.S.A. 2018 Supp. 60-260(b)*

Robert, Don, and Reba next argue the district court should have granted relief from the judgment because of excusable neglect—they were working out of town when Bank served them with its motion for summary judgment. To support this argument, Robert, Don, and Reba cite *Montoy v. State*, 275 Kan. 145, 155, 62 P.3d 228 (2003). This case does not apply because none of the parties in *Montoy* moved for summary judgment and the district court granted summary judgment sua sponte. 275 Kan. at 147, 151. Robert, Don, and Reba also rely on *Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 791, 420 P.2d 1019 (1966). But the plaintiffs in *Green* engaged in deposition testimony and that testimony provided a genuine issue of material facts. 197 Kan. at 791. Robert, Don, and Reba provided no evidence or testimony to create a genuine issue of material fact before the district court granted Bank summary judgment on its counterclaims.

Most Kansas cases addressing excusable neglect under K.S.A. 2018 Supp. 60-260(b) do so when the district court granted default judgment against a party, not summary judgment. See, e.g., *First Management v. Topeka Investment Group, LLC*, 47 Kan. App. 2d 233, 240, 277 P.3d 1150 (2012). Even so, excusable neglect is grounds for relief from either default or summary judgment. K.S.A. 2018 Supp. 60-260(b). Excusable neglect has no clear definition and must be determined on a case-by-case basis. *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978). In default judgment cases, excusable neglect exists when a party to the suit is not responsible for a failure to reply to the petition or counterclaim. See *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 64, 523 P.2d 351 (1974). In *Montez*, the defendant company's apartment manager misplaced a copy of the initial pleadings served on him. No one else knew of the lawsuit. When the defendants learned about the suit, they moved to set aside the default judgment within 12

17

days. Additionally, Montez could show no prejudice to her if the judgment was set aside, other than having to prove her case. Based on those facts, the Kansas Supreme Court found the defendants established excusable neglect. 215 Kan. at 65.

The same cannot be said here. Robert, Don, and Reba initiated their suit against Bank and Bank lodged counterclaims against them. Robert, Don, and Reba knew of Bank's counterclaims because they filed answers responding to Bank's claims. Robert, Don, and Reba promptly moved to set aside the summary judgment against them, but the fault for summary judgment was only their own. Robert, Don, and Reba were traveling for several weeks for work and did not check their mail to monitor the litigation. As pro se litigants, Robert, Don, and Reba were responsible for meeting the 21-day response deadline set out in K.S.A. 2018 Supp. 60-256(c)(1)(B), and they fail to show how their neglect was excusable. They were actively involved in the litigation and should have anticipated Bank would file motions for summary judgment, but they neglected their mail. Based on the factors in *Montez*, Robert, Don, and Reba are not entitled to relief for excusable neglect. 215 Kan. at 65.

*The district court's summary judgment formatting errors are harmless.*

Robert, Don, and Reba claim the district court erred in denying their motion to alter or amend the judgment because the first summary judgment order does not comply with Supreme Court Rule 141 (2019 Kan. S. Ct. R. 211) and 165 (2019 Kan. S. Ct. R. 221). Under K.S.A. 2018 Supp. 60-252(a), the district court must find the facts specially and state its conclusions of law separately when it enters an order of summary judgment. Rule 141(g) and 165(a) adopt the same requirements.

Here, the district court explained it adopted the uncontroverted facts in each of Bank's motions for summary judgment. It also provided no subsection detailing its conclusions of law, other than granting judgment against Robert, Don, and Reba in favor

18

of all of Bank's counterclaims. Even so, the district court's error was harmless. Robert, Don, and Reba never provided evidence to dispute Bank's factual claims. As a result, both of the district court's summary judgment orders adopted all of Bank's alleged facts. Given this adoption, the district court held as a matter of law Robert, Don, and Reba defaulted on their loans; Bank could recover for what Robert, Don, and Reba owed Bank; Bank could foreclose on the mortgages; and Bank could sell the collateral listed in each of the security agreements and any after-acquired property. Although the court's order could have more detail, this error is harmless.

*The second summary judgment order against Robert was properly granted.*

Robert claims the second summary judgment motion should have been denied. The rules governing summary judgment motions have been previously stated and we see no reason to repeat them.

Robert's reply to the second motion for summary judgment provided no contested facts to support his claims for negligence or a violation of the notice requirements for a consumer's right to cure.

*Robert's negligence claim lacks support.*

According to Robert, Bank is liable to him for negligence because it did not apply his $1,300 payment and another payment to the 2010 truck loan. Robert's alleged facts do not support denial of summary judgment because his evidence disputes no material fact. Bank's error in applying his loan payments did not cause Robert to default.

Robert is correct that Bank should have applied his March 2013 payments to the 2010 truck loan. See *Ram Co.*, 236 Kan. at 756 (finding voluntary payments made by a debtor must be applied as the debtor directs unless those payments are proceeds of the

sale of collateral). Even so, this is not a material issue to prevent Bank from foreclosing his loans and repossessing the property.

Robert caused Bank to repossess the property because he failed to pay his obligations on time. His default on any one loan was a default on every other loan. Robert's pickup, trailer, equipment, inventory, and accounts were collateral Bank could sell based on Robert's security agreements. Bank could also declare the entire unpaid balance immediately due on all the loans and request judicial foreclosure of the mortgaged property. Even the evidence Robert submitted supported he was in default on his loans. The district court did not err in granting summary judgment against Robert's claim of negligence because there was no material factual dispute at issue.

*Robert was not entitled to a consumer notice.*

The district court also did not err in granting summary judgment against Robert's consumer notice claim. Robert agreed to business loans. K.S.A. 16a-5-110 governs notice requirements for consumers who fail to make required payments in a consumer credit transaction. A consumer credit transaction is a loan obtained primarily for personal, family, or household purposes. See K.S.A. 16a-1-301(15), (17). Based on Robert's agreements, he was not entitled to a consumer notice under K.S.A. 16a-5-110 since he obtained commercial loans for his business. There was no genuine dispute of material facts, and the district court correctly granted summary judgment on this claim.

*The second summary judgment order against Don and Reba was properly granted.*

Don and Reba claim the district court should have denied the second summary judgment motion. The rules governing motions for summary judgment have been previously stated and we see no reason to repeat them here.

20

*The admitted facts from the first summary judgment order can be used to support the second summary judgment order.*

Don and Reba argue the district court erred in granting the second summary judgment when the district court applied its findings from the first summary judgment. According to Don and Reba, the district court could not apply its findings in the first summary judgment order because the order does not meet collateral estoppel.

Whether collateral estoppel (issue preclusion) applies is a question of law subject to de novo review. *In re Tax Appeal of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012). Collateral estoppel requires: (1) a prior judgment on the merits arising from the same factual circumstances and determining the rights and liabilities of the parties, (2) the parties must be the same, or in privity, and (3) the issue litigated must have been determined and necessary to support the judgment. 293 Kan. at 778.

Don and Reba's only challenge to collateral estoppel is their claim the court's first summary judgment order is not a final order under K.S.A. 2018 Supp. 60-254(b). They raise a question of statutory interpretation, a question of law over which appellate courts have unlimited review. *Neighbor*, 301 Kan. at 918. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt*, 303 Kan. at 659. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery*, 304 Kan. at 409.

To support their claim, Don and Reba cite *Vallejo v. BNSF Railway Company*, 46 Kan. App. 2d 498, 504, 263 P.3d 208 (2011). In *Vallejo*, another panel of this court found

21

a partial summary judgment was not a final judgment based on the language in K.S.A. 60-254(b). But that panel cited an older version of the statute, noting the statute allowed "the court to direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay *and upon an express direction for the entry of judgment*." (Emphasis added.) 46 Kan. App. 2d at 504.

In 2010, the Legislature amended K.S.A. 60-254(b) and it now reads "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." K.S.A. 2018 Supp. 60-254(b). The court's first summary judgment notes "[t]here is no just reason for delay in entering judgment against Donald G. Cox and Reba R. Cox. Said judgments should be and are final orders, made pursuant to K.S.A. 60-254(b)." Given the statutory change to K.S.A. 2018 Supp. 60-254(b), the district court's first summary judgment order meets the definition of a final order because it found no just reason for delay. As a final order, the district court's summary judgment meets the first requirement of collateral estoppel.

Don and Reba do not claim the first summary judgment fails to meet the other two factors of collateral estoppel. They have waived argument over those claims. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (issues not adequately briefed are deemed waived or abandoned). Moreover, the parties on these claims are clearly the same. Similarly, the issue litigated—whether Don and Reba defaulted on the terms of their agreements with Bank—was necessary to support the district court's judgment. Collateral estoppel applies, and the district court did not err in using its finding in its first summary judgment when it ruled on the second summary judgment.

*The district court correctly granted summary judgment to Bank for the trespass to chattels claim.*

The district court found Bank paid for damages to Don and Reba for the gate based on an affidavit from Bank's vice president. Don and Reba do not challenge this on appeal, so they have waived argument over this issue. See *In re Marriage of Williams*, 307 Kan. at 977. Don and Reba also admitted to receiving a replacement gate.

The appellant record does not include a copy of the affidavit the district court relied on, and the affidavit was likely attached to Bank's second motion and memorandum for summary judgment. Don and Reba must provide a record supporting their claims. They did not, so we may presume the district court did not err. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

*Bank had a security interest in Reba's 2011 PJ Trailer.*

The district court found the trailer was collateral under the 2009 security agreement signed by Don and the 2010 security agreement signed by both Don and Reba. Don and Reba, however, argued the 2011 PJ trailer was not collateral under any agreement they had with Bank. Both security agreements grant Bank a security interest in Don and Reba's farm equipment, but neither agreement specifically mentions the 2011 PJ trailer. The agreements provide after-acquired property is attached and secured by the security agreements. We have found only two security agreements for Don and Reba in this appellate record. There are also no other documents in the record to suggest the 2011 PJ trailer was not covered. Even so, there appears to be a sizable amount of the record missing—Bank's motion and memorandum for the second summary judgment. It is possible a missing document establishes the issue definitively. However, Don and Reba must provide a record supporting their claims. They did not, so we may presume the

23

district court did not err and the 2011 PJ trailer was subject to the after-acquired clause in the 2010 security agreement. See *Friedman*, 296 Kan. at 644-45.

*No support for Don and Reba's breach of contract claims*

The mortgage requires Don and Reba maintain insurance and pay their property taxes timely. The district court found Don and Reba's mortgage required they provide insurance on their property and timely pay the taxes. Don and Reba failed to raise this issue on appeal, so they have waived and abandoned the argument. See *In re Marriage of Williams*, 307 Kan. at 977. The district court did not err in this finding.

*We decline review of Don and Reba's additional arguments.*

Don and Reba also raise issues of equitable estoppel, breach of a fiduciary duty, and contract revision. They did not raise these arguments below and fail to argue why this court should review these issues for the first time on appeal. We decline to review them. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011); Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34).

Affirmed.